[No. 3897–II.  Division Two.  May 15, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES G. BYRD, *Appellant*.

*Frederick O. Frohmader,* for appellant.

*Byron E. McClanahan, Prosecuting Attorney,* and *John H. Buckwalter, Deputy,* for respondent.

PEARSON, J.—James G. Byrd, a member of the Skokomish Indian Tribe, appeals from his conviction of possession of game during a closed season (RCW 77.16.020). The primary issue on appeal is whether defendant's privilege of hunting on open and unclaimed land, granted to the Skokomish Indians in the Point No Point Treaty of 1855, is subject to Department of Game regulations that forbid hunting during certain times of the year. We hold that defendant's privilege is so limited, and accordingly affirm his conviction.

The facts in this matter are not in dispute. On June 29, 1976, defendant shot and killed a female deer on private land near the Olympic National Forest in Mason County. Under Washington State Department of Game regulations, hunting season was closed at that time. State Wildlife Agent Wayne Roberts discovered defendant in possession of the deer and subsequently issued him a citation for tak-

ing and possessing game during a closed season in violation of RCW 77.16.020.

At trial defendant offered as his defense the Point No Point Treaty, which provides in part:

> The *right* of taking fish at usual and accustomed grounds and stations is further secured to said Indians, in common with all citizens of the United States; and of erecting temporary houses for the purpose of curing; together with the *privilege* of hunting and gathering roots and berries on open and unclaimed lands.

(Italics ours.) Prior to trial, the court granted the State's motion in limine, thereby preventing defendant from introducing any evidence before the jury regarding the interpretation of the treaty. The court ruled that such interpretation was a question of law for the court to decide. Defendant subsequently waived his right to a jury and the matter was tried to the court in November 1978. He appeals his conviction.

■ Defendant initially assigns error to the trial court's granting of the State's motion in limine. We find no error. The proper construction and interpretation of the Point No Point Treaty was a matter of law to be resolved by the trial court and not by the jury. RCW 4.44.080; RCW 10.46.070; *State v. Chambers,* 81 Wn.2d 929, 506 P.2d 311 (1973). While the court might have chosen to hear the proffered testimony in the jury's absence as an aid to its interpretation of the treaty, *State v. Chambers, supra,* its refusal to hear the testimony was not error.

The central question in this appeal is whether the treaty entitled defendant to kill the deer as he did, at a time when hunting season was closed to all hunters under Department of Game regulations. Defendant argues that the treaty, made under the authority of the United States Congress, is the supreme law of the land, and exempts him from the applicability of state statutes and regulations. U.S. Const. art. 6, ¶ 2. *See Antoine v. Washington,* 420 U.S. 194, 43 L. Ed. 2d 129, 95 S. Ct. 944 (1975).

■ We are mindful of the supremacy clause and of the

canon of construction that the wording of treaties with the Indians is not to be construed to their prejudice. *Antoine v. Washington,* 420 U.S. at 199. These principles do not, however, mean that the rights and privileges granted to Indians by treaty are absolute. While the State cannot eliminate treaty rights and privileges, as sovereign owner of all the state's wildlife (RCW 77.12.010) it can regulate in the interest of conservation the manner of hunting, the size of the take, and the like. *Puyallup Tribe v. Department of Game,* 391 U.S. 392, 20 L. Ed. 2d 689, 88 S. Ct. 1725 (1968); *New York ex rel. Kennedy v. Becker,* 241 U.S. 556, 60 L. Ed. 1166, 36 S. Ct. 705 (1916). *See State v. Moses,* 79 Wn.2d 104, 483 P.2d 832 (1971). This power to regulate includes the power to totally prohibit hunting during certain periods if such regulation is reasonably necessary for conservation and does not discriminate against the Indians. *See Puyallup Tribe v. Department of Game, supra; State v. Moses, supra.*

In this case, defendant never challenged the reasonableness of the Department of Game's regulations prohibiting all hunting during certain periods of the year. Rather, he stood on an alleged absolute right to hunt under the treaty. The department's regulations, enacted under the specific authority of RCW 77.12.040, are presumed valid. *See Washington Water Power Co. v. State Human Rights Comm'n,* 91 Wn.2d 62, 586 P.2d 1149 (1978). The effect of this presumption is to make the invalidity of the regulations an affirmative defense, which defendant must raise by presenting some evidence sufficient to place them into issue. *See State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977); *State v. Moses, supra; State v. Bromley,* 72 Wn.2d 150, 155, 432 P.2d 568 (1967). Only then would the State have the burden of affirmatively establishing the reasonableness of the regulations for conservation purposes. Because defendant failed to place those regulations establishing closed hunting seasons into issue, we presume them to be valid limitations upon defendant's treaty privilege to hunt on open and unclaimed lands. Applying these regula-

tions to defendant was not error.

Additionally, we note that the treaty by its own terms reserves in the Skokomish Indians less than an absolute right to hunt. While the treaty provides that the Indians have the *right* to fish at their usual and accustomed grounds, it provides that they have only the *privilege* to hunt on open and unclaimed lands. This difference in language has been recognized as more than a semantic distinction. *See United States v. Washington,* 384 F. Supp. 312, 336 (W.D. Wash. 1974), *vacated on other grounds,* 443 U.S. 658, 61 L. Ed. 2d 823, 99 S. Ct. 3055 (1979). *See generally New York ex rel. Kennedy v. Becker, supra.* However, because the validity of the department's regulations was not in issue, we do not have the question before us whether the Indians' privilege to hunt could be more stringently regulated than their right to fish.

Because of our holding, we need not address the other issues raised by defendant.[1]

We affirm.

REED, C.J., and PETRIE, J., concur.

---

[1]We note that defendant's brief fails to comply with RAP 10.3(a)(3) in that it contains neither any assignments of error nor a statement of issues pertaining to those alleged errors.